**FILED**
**May 11, 2018**
**10:23 AM(CT)**
**TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MURFREESBORO

| | | |
|---|---|---|
| JAMES S. MACKIE,<br>　　　　Employee, | )<br>) | Docket No. 2016-05-1159 |
| | ) | |
| v. | )<br>) | |
| NATIONWIDE LOGISTICS, LLC,<br>　　　　Employer, | )<br>) | State File No. 40476-2016 |
| | ) | |
| And | )<br>) | |
| NORTHSTONE INS. CORP.,<br>　　　　Insurer. | )<br>) | Judge Dale Tipps |

---

## EXPEDITED HEARING ORDER GRANTING BENEFITS

---

This matter came before the Court on May 3, 2018, for an Expedited Hearing. The present focus of this case is whether Mr. Mackie is entitled to medical and temporary disability benefits for his alleged back and chest injuries. The central legal issues are whether he is likely to establish at a hearing on the merits that he gave adequate notice of his alleged injury and whether it arose primarily out of and in the course and scope of his employment. For the reasons below, the Court finds that Mr. Mackie is likely to prove that he gave proper notice but cannot find he is likely to prove his injuries arose primarily out of and in the course and scope of his employment. However, he is entitled to a panel of physicians.

### History of Claim

Mr. Mackie worked for Nationwide Logistics as a mechanic. On May 10, 2016, he was working on a skid loader when the loader's tire came loose. Mr. Mackie fell on his back, and the tire landed on his chest. Because he was working the evening shift, no supervisor was present. Mr. Mackie was in pain and had breathing problems, but he finished his shift and went home.

1

The next morning, Mr. Mackie went to Vickie Mitchell, FNP, his primary care provider. He also called his supervisor, Mark Russell, and told him about the accident. Mr. Mackie told Mr. Russell he would not be at work that day. He returned to work on May 12 but was unable to finish his shift because of pain and breathing difficulties. Mr. Mackie went to St. Thomas Rutherford emergency room that evening, and the hospital admitted him until his discharge on May 19. Nationwide did not provide a panel of physicians or pay for Mr. Mackie's medical treatment.

After the hospital released Mr. Mackie, Nationwide sent him to Dr. Samuel Sells for a fitness determination. Based on Dr. Sells' examination and restrictions, Nationwide terminated Mr. Mackie. He has not worked anywhere since his injury.

The parties offered a number of medical records as exhibits to the hearing. The earliest of these records is a Commercial Driver medical report that pre-dates Mr. Mackie's alleged injury. In June 2012, Dr. Sells examined Mr. Mackie and noted "abnormal and diminished breath sounds (R) lung compared to (L) lung." Noting he was a forty-year smoker, Dr. Sells recommended a complete work-up with a chest x-ray and advised Mr. Mackie to stop smoking.

Records from FNP Mitchell show that she saw Mr. Mackie for complaints of back pain the day after the work accident. He reported pulling a muscle "one week ago" and having some spasms and intermittent pain since then. Mr. Mackie also told FNP Mitchell about his work accident the day before and stated he "pulled his back severely." He said he was "in severe pain, can't sit or stand for longer than 5 minutes, can't lie down, is clammy." FNP Mitchell noted swelling, tenderness, and intermittent spasm in Mr. Mackie's back. She prescribed pain medicine and muscle relaxer and told him to go the emergency room if his condition did not improve.

St. Thomas Rutherford records show that Mr. Mackie went to the emergency department a little after midnight on May 13 with complaints of abdominal pain, nausea, shortness of breath, and radiating back pain. In one record, Mr. Mackie described pain that began when a large tire hit him in the chest at work two days earlier. In another record, he described the tire accident but noted he was having discomfort before it occurred. Specifically, he reported the onset of right upper quadrant pain and shortness of breath on Sunday, May 8, which prevented him from lying flat to sleep. Imaging studies showed a right pleural effusion, and Mr. Mackie underwent a thoracentesis procedure and placement of a chest tube.

Mr. Mackie's diagnostic tests included a thoracic MRI. These films showed a small disk bulge, so Dr. Michael Moran provided a neurosurgery consult. He noted "a T7-T8 right paracentral chronic disk osteophyte complex which abuts the cord but does not severely compress it." Dr. Moran determined the "incidentally discovered" disc

2

bulge was not clinically significant and required no further workup or treatment.

Infectious disease specialist Rakesh Kumar provided another consultation. He noted Mr. Mackie's history of pain and increasing shortness of breath beginning about a week before his hospital admission as well as a chronic cough that gradually worsened. Dr. Kumar attributed the pleural effusion to empyema with right lower lobe pneumonia, both of which he treated with numerous antibiotics. He also related Mr. Mackie's abdominal and back pain to the pneumonia and empyema.

After leaving the hospital, Mr. Mackie followed up with Dr. Moran. Dr. Moran noted some mechanical thoracic muscular pain but no myleopathic signs or symptoms. He sent Mr. Mackie for a few physical therapy visits but felt no neurosurgical treatment was necessary.

In addition to his 2016 medical records, Mr. Mackie submitted more recent records from FNP Mitchell. Her note of April 9, 2018, reflects complaints of ongoing, throbbing pain in Mr. Mackie's mid-back with tingling in his fingers. FNP Mitchell also noted swelling in his cervical/thoracic paraspinous muscles.

Both parties submitted causation opinions. Mr. Mackie offered a September 2017 letter by FNP Mitchell. She stated she saw him twelve times since July 2016 and his symptoms consistently included worsening thoracic pain with radicular pain and numbness. She concluded, "It is my opinion that his injury was caused by his work accident. He didn't have these symptoms prior to the injury." Dr. Gertrude Stone signed her name underneath FNP Mitchell's signature.

Nationwide sent a causation questionnaire to Dr. Moran asking him to review Mr. Mackie's medical records. It asked: "[C]an you state within a reasonable degree of medical certainty that Mr. Mackie's current complaints of back pain, primarily arose out of (i.e. more than 50%) his alleged work-injury of May 10, 2016, at Nationwide, Express, Inc.?" Dr. Moran checked the "No" box.

Nationwide sent a similar questionnaire to Dr. Kumar about Mr. Mackie's "current complaints of right upper quadrant pain and shortness of breath." Dr. Kumar also responded "No."

Mr. Mackie requested that the Court order Nationwide to provide additional medical treatment, payment of his past medical bills, and payment of temporary disability benefits.

Nationwide countered that Mr. Mackie is not entitled to workers' compensation benefits. It contended that his failure to provide timely notice bars his claim. Further, Nationwide argued that Mr. Mackie failed to establish that he is likely to prove that his

3

work was the primary cause of his condition.

## Findings of Fact and Conclusions of Law

Mr. Mackie need not prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2017); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

*Notice*

Tennessee Code Annotated section 50-6-201(a)[1] provides that an injured employee must give written notice of an injury within thirty days unless it can be shown that the employer had actual knowledge of the accident or that "reasonable excuse for failure to give the notice is made to the satisfaction of the tribunal." Mr. Mackie submitted no proof that he provided written notice of an injury. Likewise, he offered no proof that Nationwide had actual knowledge of his alleged injury. However, he testified that he gave verbal notice to his supervisor the day after the accident. This suggests he might have a reasonable excuse for failure to give written notice, especially since Nationwide presented no evidence to rebut Mr. Mackie's testimony or to support its notice defense.

Further, Nationwide presented no evidence of any prejudice to its ability to defend this claim. Tennessee Code Annotated section 50-6-201(a)(3) provides that failure to give notice will not bar a claim unless the employer can show it was prejudiced by the lack of notice. In the absence of any evidence on this issue, the Court cannot find Mr. Mackie's alleged failure to report the injury resulted in any prejudice to Nationwide, such as a serious impediment to investigating the claim. Therefore, the Court finds that Mr. Mackie appears likely to prevail at a hearing on the merits on the issue of notice.

*Compensability*

To prove a compensable injury, Mr. Mackie must show that his alleged injury arose primarily out of and in the course and scope of his employment. To do so, he must show his injury primarily arose out of a work-related incident, or specific set of incidents, identifiable by time and place of occurrence. Further, he must show, "to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating

---

[1] Section 201 currently requires notice within fifteen days. However, the amendment establishing the fifteen-day deadline did not take effect until July 1, 2016.

physician, it is more likely than not considering all causes as opposed to speculation or possibility. *See* Tenn. Code Ann. § 50-6-102(14) (2016).

Applying these principles to the facts of this case, the Court first notes that Nationwide presented no testimony or other proof to contradict Mr. Mackie's description of the accident he suffered at work on May 10, 2016. The Court found his testimony credible, but more importantly, it was unrebutted. Thus, no genuine dispute exists that Mr. Mackie established a specific incident, identifiable by time and place. The question to be resolved, therefore, is whether he appears likely to prove at a hearing on the merits that his work was the primary cause of the injury. The Court cannot find at this time that Mr. Mackie is likely to meet this burden.

Both parties presented opinions related to causation. Mr. Mackie relied on FNP Mitchell's letter in which she stated her opinion that Mr. Mackie's injury "was caused by his work accident." The Court cannot credit FNP Mitchell's opinion with any weight because a nurse practitioner is not competent to provide a causation opinion. *See Dorsey v. Amazon.com, Inc.*, 2015 TN Wrk. Comp. App. Bd. LEXIS 13 at *9-10 (May 14, 2015). Although the letter also contained the signature of Dr. Gertrude Stone, Mr. Mackie presented no evidence as to whether Dr. Stone concurred with FNP Mitchell's opinion or merely signed the letter for a more generic purpose, such as signing off as her supervising physician. Without more information, the Court is unable to ascribe FNP Mitchell's opinion, drafted on her own letterhead, to a physician whose role in this matter is completely unknown.

The Court admitted into evidence two medical opinions proffered by Nationwide, those of Drs. Moran and Kumar. Both doctors were asked, "[C]an you state within a reasonable degree of medical certainty" that Mr. Mackie's current complaints primarily arose out of his alleged work-injury. While both doctors answered "No," the wording of the question leaves it unclear whether they meant that they were unable to give an opinion "within a reasonable degree of medical certainty" or whether they had an opinion that the injury did not primarily arise out the work injury.

Further, the question posed to Dr. Kumar was defective in that it asked him only whether Mr. Mackie's *current complaints* of right upper quadrant pain and shortness of breath primarily arose out of his work injury. As Mr. Mackie is not alleging current symptoms of this nature, the question is irrelevant as worded. Instead, it should have addressed the cause of the complaints for which Dr. Kumar provided treatment in 2016.

Because FNP Mitchell's opinion is inadmissible and the doctors' opinions are too ambiguous to be reliable, the Court has no medical opinion addressing the cause of Mr. Mackie's condition. Absent any such opinion, the Court cannot find he is likely to prove "to a reasonable degree of medical certainty" that his work "contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering

5

all causes." However, additional analysis is required in light of Nationwide's failure to provide any initial medical treatment.

The Workers' Compensation Law requires employers to timely provide a panel to injured employees who come forward with evidence of a work-related injury. *See* Tenn. Code Ann. § 50-6-204 and Tenn. Comp. R. & Regs. 0800-02-01-.25. An employer who fails to comply with this rule without good cause could be assessed a civil penalty up to $5,000.00. *Id.* Because of this requirement, an employee who comes forward at an expedited hearing with sufficient evidence that a work event resulted in injury may be entitled to an order compelling an employer to provide a panel. *See Lewis v. Molly Maid,* 2016 TN Wrk. Comp. App. Bd. LEXIS 19, at *8-9 (Apr. 20, 2016). In *McCord*, the Workers' Compensation Appeals Board found that:

> [W]hether the alleged work accident resulted in a compensable injury has yet to be determined. Therefore, while Employee has not proven by a preponderance of the evidence that she suffered an injury arising primarily out of and in the course and scope of employment, she has satisfied her burden at this interlocutory stage to support an Order compelling Employer to provide a panel of physicians.

*McCord* at *16, 17. Thus, the question is whether Mr. Mackie has provided sufficient evidence to satisfy his "burden at this interlocutory stage" that he is entitled to a panel of physicians.

Mr. Mackie's version of events was the only proof presented at the hearing regarding the details of his workplace injury. He testified that he injured himself on May 10, 2016, and reported the problem to his supervisor the next day. Nationwide presented no evidence to refute Mr. Mackie's description of these events. Thus, the undisputed evidence establishes that Mr. Mackie promptly reported a work injury to Nationwide.

Nationwide offered no proof as to why it failed to provide a panel. Instead, it questioned whether Mr. Mackie's problems pre-existed his May 10 accident, noting that his medical records described symptoms present before that date. These concerns are understandable, but they do not excuse Nationwide from its statutory duty to provide medical treatment once it received notice of a work injury. The Court is constrained to the record before it, because "judges, like lawyers, are poorly positioned to formulate expert medical opinions." *Love v. Delta Faucet Co.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 45, at *15-16 (Sept. 19, 2016). Similarly, parties cannot rely solely on their own medical interpretations to support their arguments. *Lurz v. Int'l Paper Co.*, 2018 TN Wrk. Comp. App. Bd. LEXIS 8, at *17 (Feb. 14, 2018). Further, Nationwide's argument overlooks the question of whether the work injury might have aggravated any preexisting conditions.

Therefore, the Court finds Mr. Mackie provided sufficient evidence to satisfy his burden at this interlocutory stage that he is entitled to a panel of physicians. Nationwide is ordered to provide a panel from which Mr. Mackie may choose an authorized physician for evaluation and, if appropriate, treatment of his alleged injuries in accordance with Tennessee Code Annotated section 50-6-204(a)(1)(A).

*Temporary Disability Benefits*

Mr. Mackie also seeks payment of temporary disability benefits. An injured worker is eligible for temporary total disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability. *Jones v. Crencor Leasing and Sales*, TN Wrk. Comp. App. Bd. LEXIS 48, at \*7 (Dec. 11, 2015). As noted above, Mr. Mackie failed to prove he is likely to meet his burden of proving a work-related injury. Therefore, the Court cannot find at this time that he appears likely to prevail on a claim for temporary disability benefits at a hearing on the merits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Nationwide shall provide Mr. Mackie with a panel of physicians and any medical treatment made reasonably necessary by his May 10, 2016 injury in accordance with Tennessee Code Annotated section 50-6-204.

2. Mr. Mackie's request for temporary disability benefits is denied at this time.

3. This matter is set for a Scheduling Hearing on July 19, 2018, at 9:00 a.m. The parties must call 615-741-2112 or toll-free at 855-874-0473 to participate. Failure to call in may result in a determination of the issues without the parties' participation. All conferences are set using Central Time (CT).

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED** this the 11th day of May, 2018.

_____
**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Affidavit of James Scott Mackie
2. Nationwide's indexed medical records
3. Mr. Mackie's indexed medical records
4. Wage Statement

Technical record:
1. Request for Expedited Hearing
2. Dispute Certification Notice
3. Nationwide's Response to Request for Expedited Hearing

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 11th day of May, 2018.

| Name | Certified Mail | Fax | Via Email | Service sent to: |
|------|---------------|-----|-----------|------------------|
| Richard L. Dugger, Employee's Attorney | | | X | rldugger55@yahoo.com cc: gprwinsett710@gmail.com |
| Chad Jackson, Employer's Attorney | | | X | cjackson@morganakins.com |

_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**EXPEDITED HEARING NOTICE OF APPEAL**
Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

RFA #: _____

Date of Injury: _____

SSN: _____

_____

**Employee**

_____

**Employer and Carrier**

**Notice**

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____to the Workers' Compensation Appeals Board.

[List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

**Statement of the Issues**

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

**Additional Information**

**Type of Case** [Check the most appropriate item]

☐ Temporary disability benefits
☐ Medical benefits for current injury
☐ Medical benefits under prior order issued by the Court

**List of Parties**

**Appellant (Requesting Party):**_____At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)
**Appellee (Opposing Party):**_____At Hearing: ☐Employer ☐Employee

Appellee's Address: _____

Appellee's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I,_____, certify that I have forwarded a true and exact copy of this Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the_____day of_____, 20__.

[Signature of appellant or attorney for appellant] _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____   2. Address: _____

3. Telephone Number: _____   4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____   Relationship: _____

_____   Relationship: _____

_____   Relationship: _____

_____   Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning _____ |
| SSI | $ _____ per month | beginning _____ |
| Retirement | $ _____ per month | beginning _____ |
| Disability | $ _____ per month | beginning _____ |
| Unemployment | $ _____ per month | beginning _____ |
| Worker's Comp. | $ _____ per month | beginning _____ |
| Other | $ _____ per month | beginning _____ |

LB-1108 (REV 11/15)                                                          RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental  $ _____ per month

    Groceries     $ _____ per month    Telephone     $ _____ per month

    Electricity    $ _____ per month    School Supplies $ _____ per month

    Water     $ _____ per month    Clothing     $ _____ per month

    Gas     $ _____ per month    Child Care     $ _____ per month

    Transportation  $ _____ per month    Child Support  $ _____ per month

    Car     $_____ per month

    Other     $ _____ per month (describe: _____ )

10. Assets:

    Automobile     $ _____    (FMV) _____

    Checking/Savings Acct. $ _____

    House     $ _____    (FMV) _____

    Other     $ _____    Describe:_____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)                                        RDA 11082